Alright, without counselors who are going to argue this manner, please step up to the podium and speak into the microphone stating your name and what party you're representing. Good morning, Justice, good morning, Justice Reyes. Peter Silverman on behalf of the plaintiff's appellants. And Andrea Kostanek on behalf of the defendant appellees. Okay, so 15 minutes apiece, time for rebuttal. May I have five minutes, please? Sure. Okay, ready to proceed? Yes, sir. So before you start, I mean, we're familiar with the facts. I mean, aren't we just talking about basic, straightforward forum shopping here? I would say not at all, Your Honor. Okay. Not in the least bit. Okay. Why not? Well, I'd be happy to answer. I mean, taking a step back, I've read a lot of cases involving forum non-convenience, and I've read that every case involves forum shopping to a degree. I mean, any plaintiff goes into a forum and picks the forum. In this instance, we selected India initially, dismissed the case with the intention of refiling Illinois. There's no dispute. Why did you select India as opposed to the United States initially? I can't say I know in detail. I will say that this dispute, like most disputes, evolved over time. I think initially there were some concerns that these individuals were unfairly competing. They made statements, representations that were false, that they were not doing that. So some time passed. There was some information, evidence to believe that they were violating certain agreements. The lawsuit was filed. Over time, concerns were felt that there was much more to this, that there was trade secrets, confidential and proprietary information that was being improperly used by the math company. Although, like in a lot of these cases, you don't know all the details. It's not as if they're broadcasting that. But there was a press release in Chicago, which has been referenced in the briefs, that caused the USIGMA to focus on that issue more. And it was apparent from the press release that this information that had been developed over a very long period of time, 10 years, at a great cost, tens of millions of dollars, apparently was wrongfully taken by the defendants. This system of justice, and I'm not an expert on India law, in India is not robust when it comes to trade secret cases. There's significant limitations on discovery. No depositions. You can literally only ask for information that you know about. So you can't, like under our system, actually take discovery. Will you provide information showing your codes subject to a protective order? So you have a good faith basis to believe they did this, but you can discover it to prove it. Otherwise, you can't move forward. That was a problem. It would not have been a significant problem if you're talking about just simply solicitation of employees, which is mostly what was the focus initially. There was reference to trade secrets, but it was a general reference. It is the focal point of the case that we filed here. It is a substantial case. And if I may, in terms of forum shopping, your honor, USIGMA headquarters is at the time based here. There's a suggestion, if you look at their briefs, oh, we went across the globe to file a lawsuit. We filed it in our backyard. One of the defendants resides here. One of the contracts is based on US law. If one were to apply the typical forum non-convenience standards, and it's their burden to prove that somehow this is not the proper forum, it's not even a close call. Now, the court below did not look at those issues at all. But based on the case law, this is not a situation where we just pick a location because we think it's going to be favorable to us and beneficial to us and literally gain the system. This is not what happened here. There's close connections to Illinois. Parties reside here. And I think most importantly, the contention is that there were employees that were lured away from USIGMA at very high numbers. I think it was 75 percent, if not more, of the first hundred employees that went to the math company came from USIGMA. And it was very targeted. They would hire certain people that they knew had relationships with significant customers. They'd bring them in. And then, lo and behold, the customers would follow them. It's a blatant scheme. So was this happening prior to the litigation being commenced in India? Or was it happening during the period of time that it was litigated? Because you were litigating this in India for about four years. Well, Judge, I think the four years, which is something the other side references a lot, is a little misleading. Because during that period of time, there was a lot of delays. The COVID hit. There was an extended period of time. There was no activity. There was a lot of attention placed on an ex parte order that was entered early on for an injunction that was vacated later on. There really was not other activity of any type that I'm aware of during that. So it's not as if this was a full-fledged litigation over the course of four years. There was very little that happened. And ultimately, really the last major action was, the court said, you know, you need to try these issues. There was no, there was nothing on the merits that was decided. Nothing at all. And I believe it's a mischaracterization by the other side of what occurred there. The court said, you're going to try these issues. And at that point, the decision was made by Mu Sigma. We want information that is being concealed. We don't have this information. And we submit there's nothing wrong with going to a system where we can access the information. It's not as if this is a favorable location. You understand that people file asbestos cases in a certain county because they think they're going to get a big jury verdict. There's nothing like that. It's just, we want information. We are highly confident that if our claim is not barred, that it's a substantial claim. And there was literally a theft of a business where after two years, the business, their business grew to be an international business with Fortune 100 customers. And there's absolutely no way that that could have happened if they had not misappropriated our information. One thing, and Judge, I'm happy to answer any questions. In the dismissal in India, that was what purchased, right? So you foreclosed? Absolutely not. Absolutely not. It's not? No. Absolutely not, Your Honor. And I must say that is what the court found below. The court's ruling below, while the other side wants the court to affirm and will say, yes, the conclusion was accurate, you will see in their briefs, they make no attempt to support the reasoning by the court below, because it's insupportable, the way the judge went about it. You have laws in Illinois, United States. You have India laws. Under choice of law, you have to pick one or the other. The parties agreed it was India law. There was no dispute. There is a dispute now. They're trying to change things completely. And I submit that you don't do that unless you know you have a problem. The court below picked Illinois law. We submit it was not appropriate. And by the court below, you're referring to the circuit court? Yes, Judge Sherlock. He cited two decisions for the proposition that Illinois law decides the issue of race judicata. The decisions had not been decided by either side. So your view is that Illinois law shouldn't be applied to race judicata here? I don't believe so, but I don't think it matters. Under either system, we win. We lose if you take the two and you blur them and you pick and choose and you cherry pick, which is what was done by the circuit court. Under the India CODO procedure, there's several provisions that are significant. There's Order 23, which is the authority under which U Sigma withdrew its claims. There's Section 11, deals with race judicata. And it says that for race judicata to apply, there has to be a hearing. The matter has to be heard and decided. That did not occur here. There's Section 12, which says that even in India, if a case is withdrawn, it can be refiled in certain courts in India. So the suggestion is you could refile in these tribunal courts, other courts in India, but you can't in Illinois. And there's actually no reasonable justification for that. And then there's Section 13, which talks about, in India, how they apply, how they enforce foreign judgments. And as to that, again, in India, the law is that they will not apply a judgment from the United States from any other jurisdiction unless there's a finding on the merits. That's the same as under U.S. law and Illinois law. And I submit, Judge, if you look at the briefs that were filed in this case and you look at the briefs that were filed in the circuit court, there's not a single case, not one case, where a plaintiff is barred from bringing claims, in this case significant claims, because they voluntarily withdrew their claims in a prior proceeding. There is no case. The only times that parties are barred under race judicata, and it's a fundamental requirement, is if there's a final judgment on the merits. Under India law, there is no question that what was done was not a final judgment on the merits. Isn't the withdrawal basically a voluntary dismissal? It is a voluntary dismissal. And it should apply to Illinois law or India law? I believe that India law should be applied to determine whether it's a final judgment on the merits to determine whether the requirements for race judicata are met. But if you apply strictly Illinois law, I don't believe there's any real question that race judicata does not apply. If you look, Your Honor, at the savings statute, 13-217, a party in Illinois has an absolute right, for the most part, to dismiss a claim and may refile. But even the statute of limitations have run within the following years. And the Supreme Court has said the purpose of that is to facilitate disposition of cases on the merits and to avoid frustration of that. That's exactly what occurred here. The circuit court first applied Illinois law. We submit, based on two cases, that only one is the opposite of what it applied to, sister State law. The other says nothing about which law applies. There's a lot of Illinois law that holds that the foreign jurisdiction, the law of the foreign jurisdiction, controls these issues. But again, Your Honor, if it's India law, and, you know, with respect to India law, the circuit court did not have the authority to interpret it. You have to go through. It's like any other issue of proof. It's evidence. So we have experts. Our expert was the former Chief Justice of the India Supreme Court, Justice Tapur. Went through the law, explained the purpose and intent of the law, how it's applied, and the circuit court did not even mention him. The other side had an expert on India law as well. They agreed. There's no dispute that what happened in this case, the voluntary withdrawal of claims, was not a final judgment on the merits. At the end of the day, that's what this case comes down to. Well, is the voluntary withdrawal, where the party knew Sigma here, there's no dispute. It withdrew with the intention of filing in Illinois, where it was headquartered, its U.S. operations were headquartered. That's why it did it. And the question becomes, why should they not be permitted to do that? And the only thing that is mentioned is this Order 23. Order 23 is an administrative rule. It's something unique to the India system. It is intended to help the backlog of cases in India. It has no application here. Section 12 of the India Code says right there that if you cannot be filed in India, it does not apply to any courts where this code does not apply. So, again, you have courts. You could go, USIPA could take this claim and go into tribunals in India and refile this claim because this code does not govern those courts. But the argument is that what has been found here is you can go back to India, file in some other courts in India, but you can't file in other jurisdictions. And the only reason that you could not do that is if there's a final judgment on the merits. And how is there a final judgment on the merits? And I'm not exaggerating. There is no case, no decision, no authority that's been cited to the court or was cited below in which a similar situation where someone voluntarily dismisses a case is barred from refiling the case. And, again, this is within the statute of limitations. There's no dispute because of the saving statute that this is what I guess they do. Well, what about that argument that they raised with regards to your, what is it, the secret misappropriation, the tortious interference, and the unjust arrengement are all time bargains? I believe it's a baseless argument because the claims were all pending. They were voluntarily withdrawn, and within a year they were refiled. And the only response, and that's permissible under the savings act, the only response is, well, it was a dismissal with prejudice. Well, that's a circular argument. But to dismissal with prejudice, we recognize we can't refile the claims. Dismissal with prejudice is not a concept that's even recognized under the India system. It's not mentioned. And to somehow equate dismissal with prejudice to what occurred here is an absolute false equivalence. You have to go to so many steps and go through so many hoops to say, well, we understand that it doesn't say dismissal with prejudice under that law. We understand that a final judgment on the merits is absolutely fundamental and required for res judicata to apply. Nevertheless, we think it's similar. The one other point, Your Honor, that I would focus on is with the circuit court's ruling, there's several mistakes, and we point them out in our briefs. But one major mistake is the circuit court says that under Order 23, you can seek leave to refile if there is a formal, quote, unquote, formal defect. And he says, as found here. There was no formal defect found here. He doesn't cite anything to support it. There's nothing in the record to support it. The other side doesn't suggest that there was a formal defect. And it's important because that's how the judge gets to his ultimate conclusion where he says, well, this is really like a dismissal with prejudice. He picks and chooses between two sets of laws, which he doesn't have the authority to do. There's no law that allows a judge to say I'm going to pick a little bit of here and a little bit of there. But that's what he did. But in order to do that, he sets up what is a baseless fact, one that is not supported by the record, that there was a formal defect found. And then he concludes, so Mu Sigma, if they wanted to, could have simply just asked for leave to refile and there wouldn't have been a problem. And they didn't. So it was somehow voluntary that it would be a permanent thing. The reality is there is nothing in the record to suggest that Mu Sigma had the right just to simply say, may we refile here at some point, and that would have salvaged their claims. And it's important to note that the affirmative defense of race judicata was asserted by the defendants. They have the burden of establishing that it applies. There's nothing in the record to establish that Mu Sigma had the right to seek leave to refile in India. And it's very important because what ultimately the circuit court concluded was, this is actually just like a dismissal with prejudice. It isn't at all. It's a completely different set of laws that are controlled. And it was a completely different set of circumstances. Okay. Well, do you want to wrap up? We've got time for rebuttal. Do you want to wrap up? Yes. I mean, there's other grounds that were raised before the circuit court that the judge did not address. We don't believe that there's any independent grounds to affirm. We believe as a matter of law, they're all they fail, but at a bare minimum, there's factual issues associated with those other grounds that were not addressed by the circuit court, and happy to answer any questions as to those alternative arguments. So should the court consider those questions in our left remaining? Your Honor, you're perfectly free, as I understand, to affirm on any ground. I don't believe with these alternative arguments, as the circuit court found, the crux of the argument was race judicata. We think it's a very weak argument. You know, if you look at the briefing below, the math company spent half a page on the argument. Then they moved down the argument in their reply, and it's like a couple of  And then he ran it. And he went through a whole system of arguments and reasoning that they're running away from. They don't even attempt. They don't even ask, Your Honor, to accept that reasoning because they know that it's not justified. Thank you very much. Before we proceed any further, I just want to advise the parties that our other panelist, Justice Lampkin, unfortunately couldn't be here today, but she will be listening to the tapes and participating in the decision in this case as well. Thank you. May it please the Court. This Court should affirm the circuit court's dismissal of the complaint on res judicata grounds. As Judge Reyes noted at the outset of the argument, this is straightforward pawn shopping. So Mu Sigma first brought its case in India. It was represented in that litigation by sophisticated Indian counsel who knew the laws and the procedure of India. It litigated against the math company there for four years, and then only after the preliminary injunction was vacated and the Court found that Mu Sigma had not made out a prima facie case against the math company, did Mu Sigma withdraw its suit unconditionally and file in Illinois. So your view is that there was a final judgment on the merits of that and res judicata should apply? Yes, Your Honor. And I think this Court could decide this either under res judicata or foreign nonconvenience, and you get to the same result. So Mu Sigma admits that it dismissed effectively with prejudice to file in a more favorable forum. And let me start with res judicata. Why is it dissected with prejudice? Well, because India doesn't have the same labels that we do. So there's no such thing in India as a label of with or without prejudice. And instead what this Court needs to do is look at how Illinois courts define res  There's no case in Illinois that applies res judicata effect to a voluntary dismissal with prejudice. That's incorrect. So we cite in our brief this Court's decision in Mann v. Rowland. Here's a quote from that case. A voluntary dismissal with prejudice should be treated as a final judgment on the merits for purposes of res judicata. And then the question is, as Judge Reyes pointed out, is was this dismissal in India with prejudice, meaning it could not be filed again? And it was. I'm sorry. Let me interrupt. So here we have, you know, Supreme Court Rule 304A. And once we see that, then we say, okay, well, this is final disposition on the matter. And then you have the right to appeal. So you're saying that there isn't any similar type of language in India? Well, that language and that procedure is dictated by Rule 23. So I would point out, Your Honor, there's two sub-rules under Order 23. One is 3, Sub-Rule 3, which provides the procedure if a party wants to be able to file again, so essentially without prejudice. They have to ask for it at the time, and the court needs to grant it. Then Sub-Rule 4 says if the party does not do that at the time, it shall be precluded from instituting any fresh suit on the same subject matter. And everybody here agrees that that Sub-Rule 4 governs this dispute. Justice Sikar, in his declaration that he submitted in support of Musigma, says, I think it's paragraph 2020 in his declaration, he says, Musigma would be precluded from instituting a fresh suit in India. And so if you take, I mean, the cases of this Court in the context of giving res judicata effect to a foreign judgment, essentially cite Illinois law and the definition of what constitutes an adjudication on the merits, and then maps it onto what the what happened in the foreign court. So near Jekyll, that was, I think, a Israeli judgment. Parentage of A.H., that was a Thai judgment. And both of those cases, the Appellate Court takes the definition of res judicata from Illinois, what constitutes a final adjudication on the merits, and then looks, what happened in that foreign court? Does it meet the Illinois definition? And that's precisely what this Court should do and what the circuit court did below. So your argument hinges upon this Rule 23, specifically that subsection 4, inasmuch as Musigma did not take advantage of petitioning the court in India to allow its dismissal to be one to which it could be filed and predicated upon and to believe then that the dismissal was with prejudice. That is correct, Your Honor. That's exactly right. So they couldn't refile in India, and Illinois doesn't allow them to do here what they couldn't do there. That is, and it gets How do you address their argument that it seemed almost nonsensical to ask for such relief when they had no plans on refiling in India? Their plan was to file here. Yeah, it's an interesting question, Your Honor. I mean, they could have asked for the ability to keep it open. So it's known as what our declarant, Ms. Shroff, notes as a conditional withdrawal. So they have to jump through the particular hoops in India to leave that possibility open as opposed to an absolute withdrawal. So I understand Isn't that what they're arguing, that they did get a conditional withdrawal? I don't think that they argue that, Your Honor. I think everybody agrees that they did not receive a conditional withdrawal. And if you look at the motion, the memo of withdrawal that was filed in the Indian courts, it does not ask for the permission to refile again. It doesn't There needs to be a formal defect. There needs to be a jurisdictional issue. Those are the situations in which it could be essentially without prejudice in India. And, in fact, I understood counsel at the end of this argument to say none of those apply here. So I don't think that there's any disagreement. The only disagreement is really how do you map the Illinois framework of res judicata onto what happened in the foreign courts. And I would also point out just from a policy perspective, I mean, there are 195 countries in this world. Each could have a different definition of res judicata. There could be countries that don't recognize preclusion doctrine at all, and Illinois courts are not required to allow refiling here simply because the definition of res judicata in that foreign country differs from this Court, from this – from Illinois courts. Now, I would just pivot to say that even if this Court doesn't think res judicata applies, all of these same undisputed facts requires dismissal for form nonconvenience as an alternative ground. So Mu Sigma's first choice of forum, as we've talked about, is India, and that makes sense because that's where the corporate defendants were located, that's where the employment agreements were signed, that's where the injury originated. And it wasn't until, as we've discussed, Mu Sigma lost that injunction motion that it sought to dismiss its case and refile. And let's take by analogy, let's say they had been litigating in, you know, Winnebago County, and then when things weren't going so well for them, they moved to dismiss and decided to come to Cook County. They wouldn't be allowed to do that under form nonconvenience doctrine. That would be forum shopping. And the Illinois Supreme Court in Piley addressed a situation that was not that different from here. So in that case, there had been litigation in Pike County, the plaintiff dismissed, refiled in St. Clair County, where one of the defendants was located and where the site of the injury was. And the Illinois Supreme Court, when it got up to it, said, you know, the lower courts gave way too much deference to what was the plaintiff's second choice of forum. It had been litigating in Pike County for two years. It is clearly forum shopping, and that shouldn't be allowed. Like, our doctrine of forum nonconvenience is animated by a concern over forum shopping. And so even if this, for some reason, isn't res judicata, and we urge this court to decide it on res judicata grounds, but the alternative is that it leads to dismissal on forum nonconvenience grounds. So going back to res judicata, what, if anything, was decided in the Indian court? I'm sorry, can you say that one more time? So going back to res judicata, what, if anything, was decided by the Indian court? I mean, we don't want to be relitigating and deciding things that were already determined by another court. So what was decided in the Indian court? So, and let me just clarify, because it's not like there were facts found that, like, there's no jury trial that happened. But in Illinois, the Illinois courts apply a definition of res judicata that encompasses voluntary dismissals with prejudice. So not all dismissals, but voluntary dismissals with prejudice. So that's the Mann v. Roland case, and we cite other cases in our brief. And so if it's effectively a dismissal with prejudice in India as well, then res judicata applies, even though there wasn't, you know, fact finding. There was no jury that sat or the equivalent. So that, you know, triggers the same considerations under res judicata. It qualifies as res judicata under Illinois law. So four years in Indian court, and the Indian court didn't render a decision on any of the issues? Well, it rendered a decision on the preliminary injunction motion. And I'll point out a few findings that it made that may help, Your Honor. So in June of 2019, on the Mapp Company's motion, the Indian court vacated the interim injunction, and it found that Mu Sigma had, quote, not made out a prima facie case for the grant of an interim temporary injunction, had not proven that the balance of convenience lies in their favor. That's at page C-292 of the record on appeal. And then there's additional specific findings at C-317 and 18, including that simply leaving Mu Sigma's employee and starting a new company was not soliciting and competing, and that Mu Sigma, quote, had failed to prove a prima facie case. So those are all, you know, decided in the context of the preliminary injunction. But again, you know, that final adjudication on the merits that triggers Illinois res judicata is then Mu Sigma responding to those events in the case and dismissing effectively with prejudice by not having leave to refile under Order 23. So all the parties that were involved in the litigation in front of Judge Sherlock were the same parties that were involved in the litigation in court? Effectively. I mean, there are some different affiliates, but there's no dispute that they're all in privity. Okay. Was there an amendment of the complaint at any point in time in India? In India, I don't think that there was. And that's another really good point, Your Honor, is that, you know, they complain about, you know, the continuation of injury in the U.S. And, of course, they could have amended their complaint after the 2011 press release included additional allegations. And it just proves that, you know, they didn't need to dismiss and come to Illinois for any good reason. Okay. In the same identity in terms of causes of action? Yes, Your Honor. In both courts. That's correct, yes. Okay. If there are no further questions from this Court, we would ask that you affirm the judgment of the circuit court. Okay. Thank you. If I may, Your Honor, just a few follow-ups. Sure. Counsel focuses on the definition of res judicata. There's a fundamental requirement, as res judicata principle is defined, under any state  which is a final judgment on the merits. It's true in India. It's true in Illinois. It's true in any of the laws that are addressed in any of the cases that are cited to this court. One case that counsel mentioned that they rely on, In Re Parentage, is really a graphic example of how this works. In that case, there was a trial on the merits, and so then the court applied res judicata. When I said earlier that there's no case that supports their position, it's true. There is no case where there was a voluntary dismissal. They say with prejudice, and that's the conclusion that they're reaching. Withdrawal of claims where subsequently res judicata was applied to bar those claims. In every instance where they're citing to authority and res judicata is applied, there was a final judgment on the merits. Every single case, not here. There was not, even arguably. They talk about four years. It's a gross exaggeration. While technically true, it was four years. There wasn't a lot going on in the case. There was no ruling on the merits. Not even arguably so. They can't and they don't suggest otherwise. All that happened was the court said, you have to prove this. You need to prove these things. And at that point. Are you referring to the Indian court? Yes, the Indian court. And so, logically, reasonably, the reaction was, well, we can't take discovery. The most basic discovery we're not permitted to take. And so, they dismissed the claims with the intention of refiling. There's no dispute that that's what they intended to do. They did not intend to dismiss with prejudice. As the math company agrees, in Illinois, the default is if you dismiss, it's without prejudice. And you have to go through such gymnastics to say, yeah, it's not a concept recognized dismissal with prejudice under the India system. Well, we're going to go through all these steps to come to that conclusion. We're going to bar substantial claims, even though there was no final judgment on the merits, objectively. And they cannot and do not cite to a single case that would support that outcome. The other thing I'd mention, the question that you asked, Justice Martin, about the sub-rule 3 in the Order 23, there are two ways, two requirements that can be met, one or the other, which would allow a party to ask a court for the right to refile. There's nothing in the record that suggests that either of those requirements could have been met by Mu Sigma. And again, it is their burden of proof. This is their affirmative defense. And they have to establish, I believe, to suggest that this is a dismissal with prejudice. They have to show that Mu Sigma went into court. They had a right to preserve these claims, and they just didn't do it. And there's nothing in the record to support that. Although Judge Sherlock said that there was a formal defect found, it's not true. It was not found under India law. The experts don't say it. Judge Sherlock does not have the authority to interpret India law, and certainly not in a way that's not well based. In the end, Your Honor, as to race judicata, it's an unprecedented position that they're taking. We ask that the court reverse remand the case. It is a substantial case. This is a theft of a business. It is a business that's headquartered in Illinois. The clients involved predominantly are in Illinois. One of the defendants is Illinois. One of the contracts applies to Illinois law. And to suggest that this is not a proper form is absolutely faceless. Every case they cite is one of these fantastic cases where the party has no connection to the new form and is trying to game the system, that there's something about it. Not just that they want to take discovery. They can go to any jurisdiction in the United States and take discovery. There's nothing about Illinois other than that's where we reside in the United States. That's why he picked Illinois, not to gain some unfair advantage, not to game the system. And it is, there's no basis to find that this is not a proper form. So I have a question. One of the, you know, Judge Sherlock relied on some India law when looking at it when he wrote his decision, and one of them had to deal with the withdrawal and adjustment of suits. And in there, under Section 4B, it says withdrawals from a suit or a part of a claim without the permission referred to in Segment 3, the party is liable for cost, et cetera, and shall be precluded from instituting any fresh suits. So in effect, isn't that a final determination by the party willingly withdrawing the cause of action? Judge, I say it is not for a couple of reasons. One is the issue is whether you can refile in India. It's not the claims, they're not extinguished. Unlike if you have a dismissal with prejudice in Illinois, it's not you can't refile these claims. The claims have been adjudicated. They are distinguished. They are extinguished. It's not, and the Order 23. This rule, I'm sorry to interrupt, but this rule pertains to withdrawals. Yes. The rule specifically says if a party withdraws a suit, then they're precluded from instituting any fresh suits. In India. In certain courts in India. Okay. And there's other provisions that are extremely important under the India Code. Section 11, Section 13 deal with waived judicata, the very issue before this court. But earlier you said that you did go back and refile. In certain courts in India. So there's civil courts that are governed by the Code of Procedure. And the Code of Procedure says as to those courts, unless you get basically leave, you cannot refile in the civil courts. You can file in some of the other courts, these tribunal courts. My point only was you can file in those courts, but the circuit court has found you can't file here. So it's based on an administrative rule. It's a procedural rule based on the docket in India, saying that we have cases, we have backlogs, so we're going to have this rule. Completely separate and distinct from waived judicata. They have separate rules, Section 11 and Section 13, which are just like U.S. law, and they require a final judgment on the merits. You can't get around that fundamental, absolute requirement, and it has not been met here. And the consequence is extremely significant, where you have a company based in Illinois, another company rips off their trade secret information, all their information, takes all their employees, takes all their customers, and they are barred because they withdrew claims in India because they want to take discovery. It's not justified. It's not warranted. And respectfully, it was not authorized. And we would ask that the court reverse and remand. Thank you very much. Thank you. Okay. Well, again, as I indicated earlier, Justice Lankin could not be here. She will be listening to the case. I want to thank counsel for a well-argued matter and a very interesting issue. And this court will take it under advisement.